UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Louise Peltier, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. 3:06-cv-12 |
| | ) | |
| Jo Anne B.  Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM AND ORDER GRANTING PLAINTIFF' MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

### SUMMARY OF DECISION

Because the ALJ failed to address the inconsistent IQ test scores and because the

Dictionary of occupational titles is inconsistent with the hypothetical posed to the vocational

expert the Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for

Summary Judgment is DENIED and the case is REMANDED to the Commissioner for

additional findings.

### STATEMENT OF THE CASE

This is a proceeding under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-

1383c wherein the claimant seeks judicial review of the final determination of the Commissioner

of Social Security finding that she was not entitled to Supplemental Security Income (SSI). The

Plaintiff filed protectively SSI under the act alleging that she became disabled on March 26,

2001 due to difficulty with reading and spelling, having a "hard time catching on right away",

needing "a lot of instruction and only one task at a time" and an inability to do paper work.

(Tr.71-74, 82). Her application was initially denied (Tr. 38-49) and upon reconsideration (Tr.

267-291), a request for an administrative hearing was timely made and a hearing was held before

the Administrative Law Judge (ALJ) (Tr. 12-20). The ALJ considered the evidence presented

and issued an unfavorable decision on April 8, 2004. (Tr. 12-20). The ALJ found that although

the Plaintiff has organic mental disorder and learning disorder she does not have an impairment

or combination of impairments listed in, or medically equal to one listed in Appendix 1 to 20

CFR Part 404, Subpart P. (Tr. 20). The Appeals Council denied Peltier's request for review on

November 10, 2005 (Tr. 4-6). The decision of the ALJ became the final decision of the

Commissioner by operation of law. See, 42 C.F.R. § 404.981 (2004). Peltier seeks judicial

review upon exhaustion of her administrative remedies under 42 U.S.C. 405(g). Louise Peltier v.

Jo Anne B. Barnhart, Commissioner of Social Security, Clerk's Docket #3, (D.N.D. 2004)(File

No. A3-04-082)(January 20, 2006). Peltier moved for summary judgment on March 31, 2006.

Docket # 8. The Commissioner also moved for summary judgment. Docket # 10.

     The Plaintiff was born on January 6, 1970. ( Tr. 71). She suffers from an organic

mental disorder and a learning disability. (Tr. 20). She attended school through grade eight in

Dunseith, North Dakota. (Tr. 89). She quit school after she started tenth grade. (Tr. 89, 274).

She does not have a GED. (Tr. 274). She has no past relevant work. (Tr. 19).

     In 1986, at age 16, Plaintiff was assessed by a school psychologist, Dr. Paul Dauphinais,

Ph. D. (Tr. 112-119).   The Wechsler Intelligence Scale for Children-Revised (WISC-R)

disclosed a verbal IQ of 50, a performance IQ of 88 and a full scale IQ of 68.  (Tr. 112).  Dr.

Dauphinais found Peltier's scores were very low in the verbal portion of the test. (Tr. 118).   The

subtests included general information, vocabulary, common sense and arithmetic.  Dr.

Dauphinais concluded that Plaintiff either had not learned the very basic information or was

unable to retrieve it. (Tr. 118).  He noted that Plaintiff had difficulty with language expression

and processing.  (Tr. 118).  He recommended special services for Peltier.  (Tr. 119).

At this same time Plaintiff was the subject of a report for her Individual Education Plan.

(Tr. 120).  The plan indicates that she should receive one hour per day of special education

services and be mainstreamed into regular classrooms for her other classes with modifications

for her reading problems.  (Tr. 122).

On February 14, 2000 when Plaintiff was 30 years old, she returned to Dr. Dauphinais for

an evaluation to determine eligibility for vocational rehabilitation services. (Tr. 67) .  Although

Peltier tested for her GED 5 or 6 times, she was unable to pass the GED test. (Tr. 274).  She was

given the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III).  (Tr. 167).  This second

test revealed a verbal IQ of 69, a performance IQ of 79 and a full scale IQ of 72 (Tr. 167).  He

found the full scale IQ of 72 to be the best indicator of her ability. (Tr. 167).

She was also seen at the Communication Disorder Clinic at Minot State University.  (Tr.

169).  During the testing for an evaluation her auditory acuity was within functional limits but

her attention span was reduced. (Tr. 170, 173).  She exhibited dental abnormalities and

articulation problems but was intelligible during conversation. (Tr. 173).  She had marked to

significant deficits linguistically.  (Tr. 173).  The results were consistent with her decreased level

of cognitive functioning and reduced educational achievement.  (Tr. 173).

Peltier's records were reviewed by Dr. H.D. Hase, state agency psychologist.  (Tr. 180-193).  He found that Plaintiff had an organic mental disorder encompassing borderline intellectual functioning and a reading disorder.  (Tr. 181).  He found mild restriction of daily activities of daily living; moderate difficulty in maintaining social functioning; marked difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 190).  Dr. Hase concluded that Plaintiff "could be expected to do simple, routine work of [an] unskilled nature".  (Tr. 178).  This was confirmed by a reviewing medical consultant. (Tr. 194).

On July 31, 2002 Peltier appeared for a psychological evaluation in connection with her application for benefits.  (Tr. 196-199).  Dr. Volk, a clinical psychologist, noted the 2000 IQ scores indicated "intellectual functioning in the borderline range of ability.  (Tr. 197).  After further testing Dr. Volk found Plaintiff had diffuse and significant cognitive impairment that was consistent with her diagnosis of Borderline Intellectual Functioning.  (Tr. 199).

Dr. Hase reviewed Plaintiff's records again on August 28, 2002.  He again concluded that Peltier had an organic mental disorder encompassing borderline intellectual functioning and a learning disorder.  (Tr. 216).  This produced a moderate restriction of the activities of daily living, difficulty maintaining social functioning, and marked difficulty in maintaining concentration, persistence and pace. (Tr. 225).  She had a marked limitation to understand and remember detailed instructions.  (Tr. 211-212).

Plaintiff testified at the hearing before the ALJ and reported that she could not work because she had trouble understanding things and was unable to read.  (Tr. 279).  She also complained of memory problems which required her to write things down.  (Tr. 282).  She could

read her own writing but indicated others had difficulty reading it.  (Tr. 282). She reported

depression and trouble sleeping.  (Tr. 279).  She also had problems with headaches up to three

times a day, though they were helped with medication.  (Tr. 280-281).  She also complained of a

buzzing sound in her right ear.  (Tr. 283).

Warren Haagenson, a vocational expert testified at the hearing in front of the ALJ and

testified that Plaintiff had no past relevant work.  The ALJ then asked whether a an individual of

Plaintiff's age and educational background, without limitations, without complex tasks as

simple, rote, repetitive tasks, learnable with verbal and visual instructions, and no dealing with

the public or handling money.  (Tr. 286).  Mr. Haagenson opined that such an individual could

work as a motel cleaner and hand packager with 6,000-8,000 and 40,000 jobs in the region. (Tr.

286-287).

Following the hearing the ALJ found that Plaintiff had  "severe" impairments of "organic

mental disorder and learning disorder."  (Tr. 16).  He further found that the impairments did not

meet or medically equal any of the impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 17).

He determined that Plaintiff has a residual functional capacity that does not have any exertional

or physical limitations, but that she is limited to unskilled, simple, repetitive tasks and is unable

to perform work involving money or interaction with the public.  (Tr. 19).  The ALJ relied on the

vocational expert's opinion that Plaintiff could work as a motel cleaner or hand packager and

was thus not disabled under the Act. (Tr. 20).

## *DISCUSSION*

The standard of review applied to determinations of the Commissioner is deferential, and

the Commissioner's findings are to be affirmed if supported by substantial evidence in the records

as a whole.  Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003).  Substantial evidence is less than

a preponderance, but is enough that a reasonable mind would find it adequate to support the

Commissioner's decision.  Sultan v. Barnhart, 368 F. 3d 857, 862 (8th Cir. 2004).  In order to

determine whether evidence is substantial, the court considers "evidence that detracts from the

commissioner's decision as well as the evidence that supports it."  Id. at 863.  The Commissioner's

decision is not subject to reversal simply because the reviewing court would have reached a

different conclusion or because substantial evidence also exists which would support a contrary

outcome.  Id.   If after review the court is capable of drawing two inconsistent positions and one of

those positions represents the Commissioner's findings, the decision must be affirmed.  Dixon v.

Barnhart, 353 F.3d 6602, 605 (8th Cir. 2003).

An individual claiming disability benefits has the burden of proving her disability by

establishing the existence of a physical or mental impairment lasting at least twelve months that

prevents her from engaging in any substantial gainful activity.  Bergmann v. Apfel, 207 F.3d 1065,

1068 (8th Cir. 2000);  42 U.S.C. § 423(d)(1)(A).  If the claimant succeeds, the burden of persuasion

shifts to the commissioner to establish that plaintiff can perform some other type of substantial

gainful employment in the national economy.  Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).

The claim is analyzed pursuant to a five-part test: (1) Is the claimant currently engaged in

substantial gainful activity? (2) Does the claimant have a severe impairment or combination of

impairments? (3) Does the impairment meet or equal an impairment listed at 20 C.F.R. pt. 404,

Subprt. P, app. 1? (If so, disability is automatic); (4) Does the impairment prevent the claimant

from doing past relevant work?  And,  (5) Does the impairment prevent the claimant from

performing any other work that exists in the regional or national economy in significant numbers?

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See, 20 C.F.R. §404.1520 (2002).

When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary.  See, Bartlett v. Heckler, 777 F.2d 1318, 1319 (8th Cir. 1985).  At the final stage only is it permitted to consider the claimant's age, education and work experience in light of his or her residual functional capacity.  McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.1520 (2002).

All parties agree with the ALJ's findings that Plaintiff has not engaged in substantial gainful activity and that Plaintiff has severe impairments: namely organic mental disorder and learning disorder.   Thus the question for this court is whether there is substantial evidence to support the ALJ's findings on steps three and five of the five part test (Plaintiff had no past relevant work at step four).  Plaintiff contends that the ALJ failed to address the discrepancy between Ms. Peltier's 1986 IQ test and the test taken in year 2000, that the ALJ failed to apply the correct legal standard for determining whether Ms. Peltier met the listing for mental retardation, that the ALJ's hypothetical did not reflect Plaintiff's impairments and resulting functional limitations, that the vocational expert provided testimony inconsistent with the information in the Dictionary of Occupational Titles, that the ALJ findings relating to Ms. Peltier's mental abilities were absent and the credibility finding was inadequate.  The Commissioner contends the ALJ findings are supported by substantial evidence.

### IQ Test Discrepancies

The record contains the results of two IQ tests administered to Plaintiff in 1986 and 2000 by Dr Dauphinais. (Tr. 112-119 and Tr. 167-168).  The Social Security regulations do not specify which of two conflicting scores an ALJ should disregard when there are conflicting scores from two apparently valid IQ tests.  Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001).  One court has suggested that the regulations require that the Social Security Commissioner prefer the lowest

score.  Id. Citing  Ray v. Chater, 934 F.Supp. 347,350 (N.D. Cal 1996).  If the Ray approach was

followed Peltier would be disable under 12.05 Mental retardation because she would have a "valid

verbal performance or full scale IQ of 59 or less".  20 CFR Ch. III Pt 404, Subpt. P. App.1 12.05

(A).  Further the regulations provide that if "a full scale IQ are provided in the Wechsler series we

use the lowest of these in conjunction with 12.05."  20 CFR Ch. III Pt.404, Subpt. P. App1 (D)(6)

(c).  An argument can be made that the lowest score from several valid full IQ tests should be the

score used, thus qualifying claimant for benefits. This is because a person's IQ is presumed to

remain stable over time.  Muncy 247 F.3d at 734.  However an ALJ may disregard a claimant's

score if the score is inconsistent with the claimant's daily activities and behavior.  Muncy, 247 F.3d

733.  Here the ALJ found that Peltier did not have additional impairments that imposed a

significant limitation on her ability to perform work-related functions.  Plaintiff had only moderate

restrictions in activities of daily living, moderate difficulties in maintaining social functioning and

no episodes of decompensation.  (Tr. 17) While she has marked difficulties in maintaining

concentration, persistence and pace the ALJ found no evidence of an underlying chronic disorder

of at least two years duration resulting in decompensation.  (Tr. 17). Thus under 12.05(D) the ALJ

found that Peltier had one but not two of the requirements under D and thus did not have the

required level of severity of mental retardation to qualify for benefits.  In this case, like Muncy, the

case should be remanded to the Commissioner to explain why the 2000 IQ test was preferred over

the 1986 test that would have qualified Peltier for benefits.

### *Mental Retardation*

Under the rules mental retardation 'refers to a significantly subaverage general functioning

with adaptive functioning initially manifested during the developmental period..."  20 CFR pt. 404,

subpt. P app. 1 Listing 12.05. (2006).  Plaintiff contends that her 1986 score qualifies her under

section "B".  Once the ALJ decided that score was not the proper score to use his review is whether

Plaintiff qualified under the remaining standards.

Section A indicates that mental capacity may be "evidenced by dependence upon others for

personal needs (e.g. toileting, eating, dressing or bathing) and inability to follow directions, such

that the standardized measures of intellectual functioning is precluded."  The ALJ found no

evidence of decompensation, functional limitations, or a highly supported living arrangement.  (Tr.

17).

The required level of severity may also be met if a claimant shows "a valid verbal,

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing

an additional and significant work related limitation or function;"  (under C).  The ALJ considered

claimant's headaches and found they were not severe and imposed no more than minimal

limitations on her ability to perform work related activity.  (Tr. 16).  The ALJ also considered

claimant's symptoms of depression and insomnia. (Tr. 16).  The ALJ found the duration was not

sufficient to constitute a severe impairment.  (Tr. 170). Finally claimant reported "buzzing" in her

ear two or three times per month for twenty minutes at a time.  (Tr. 17).  The ALJ found the

buzzing was not a determinable medical impairment.  (Tr. 17).  Thus the ALJ determined that a

finding could not be made on medical considerations alone and that Plaintiff was not fully credible.

(Tr. 17).  The ALJ noted that Plaintiff gave inconsistent testimony about her ability to read and

write.  (Tr. 18).  The ALJ noted that she testified she could not read and write but relied on her

daughter but later stated she wrote down things all the time and could read her own writing when

no one else could.  (Tr. 278 and 272).  The ALJ also noted that Plaintiff cared for her five children

by herself, cleaned her house, prepared her children's meals.  (Tr. 277, 278, 95-97). There is

substantial evidence in the record to support his conclusions.  If however the ALJ should have used

9

the lowest IQ score Plaintiff's credibility is not relevant and she is entitled to benefits because of

the severity of her retardation.

### *Vocational Expert*

Based on the testimony of the vocational expert, the ALJ found that Peltier retained the

residual functional capacity to perform unskilled work.  (Tr.19).  The ALJ posed a hypothetical

question to the vocational expert assuming Plaintiff's age, education and background and no

exertional limitations.  The ALJ then asked whether Plaintiff was capable of "simple, rote,

repetitive tasks, learnable with, verbal and visual instructions, no dealing with the general public,

no dealing with money."  (Tr. 286).  Testimony from a vocational expert based on a properly

phrased hypothetical question constitutes substantial evidence.  Howard v. Massanari, 255 F.3d

577, 582 (8th Cir. 2001).  The vocational expert testified that Plaintiff could perform the work as a

motel cleaner and hand packager.  (Tr. 286-287).

A proper hypothetical question presents to the vocational expert a set of limitations that

mirror those of the claimant.  Hutton v. Appel, 175 F.3d 651, 656 (8th Cir.1999).  Plaintiff contends

that the vocational expert's testimony was in conflict with the Dictionary of Occupational Titles

(DOT) which requires that the expert's opinion be disregarded.  When expert testimony conflicts

with the DOT, the DOT controls.  Montgomery v. Chater, 69 F.3d 273,276 (8th Cir. 1995).  The

DOT classifications may be rebutted with expert testimony that shows that particular jobs are ones

claimant can perform.  Id.  The ALJ found that Plaintiff's "limitations preclude complex tasks,

dealing with money, or public interactions."  (Tr. 19).  The vocational expert found that the jobs of

hand packager and motel cleaner were consistent with the descriptions in the Dictionary of

Occupational Titles and were jobs the Plaintiff was capable of doing.  (Tr. 19).   However the DOT

requires a hand packager to have reasoning skills sufficient to carry out detailed but uninvolved

written oral instructions and the mathematical skills to perform the four basic arithmetic operations

with coins as part of a dollar. DOT 323.687-018.  The testimony shows that Ms. Peltier could add

and subtract but not multiply or divide.  (Tr. 275).  Similarly the house cleaner, hotel & restaurant

has the same mathematical skills requirement.  Ms. Peltier's marked limitation including her

inability to understand and remember detailed instructions and limited ability to attend and

concentrate and interact with the public are not addressed by the vocational expert or the ALJ.

Thus the ALJ could not properly conclude that Plaintiff was not disabled because she could

perform work existing in the national economy despite her mental impairments.

IT IS HEREBY ORDERED that the Plaintiff's motion for summary judgment is

**DENIED.**

IT IS FURTHER ORDERED that the Defendant's motion for summary judgment is

**GRANTED.**  The matter is hereby **REMANDED** to the Commissioner for further findings

consistent with this opinion.


Dated this 19th day of June, 2007, at Fargo, North Dakota.


*/s/ Ralph R. Erickson*
Ralph R. Erickson
United States District Judge


11