UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Louise Peltier, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. 3:06-cv-12 |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**AMENDED MEMORANDUM AND ORDER DENYING PLAINTIFF' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO THE COMMISSIONER FOR ADDITIONAL FINDINGS**

*SUMMARY OF DECISION*

Because the ALJ failed to address the inconsistent IQ test scores and because the Dictionary of occupational titles is inconsistent with the hypothetical posed to the vocational expert the Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Summary Judgment is DENIED and the case is REMANDED to the Commissioner for additional findings.

*STATEMENT OF THE CASE*

This is a proceeding under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-

1

1383c wherein the claimant seeks judicial review of the final determination of the Commissioner of Social Security finding that she was not entitled to Supplemental Security Income (SSI).  The Plaintiff filed protectively SSI under the act alleging that she became disabled on March 26, 2001 due to difficulty with reading and spelling, having a "hard time catching on right away", needing "a lot of instruction and only one task at a time" and an inability to do paper work. (Tr.71-74, 82).  Her application was initially denied (Tr. 38-49) and upon reconsideration (Tr. 267-291), a request for an administrative hearing was timely made and a hearing was held before the Administrative Law Judge (ALJ) (Tr.  12-20).  The ALJ considered the evidence presented and issued an unfavorable decision on April 8, 2004.  (Tr. 12-20). The ALJ found that although the Plaintiff has organic mental disorder and learning disorder she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1 to 20 CFR Part 404, Subpart P. (Tr. 20).  The Appeals Council denied Peltier's request for review on November 10, 2005 (Tr. 4-6).  The decision of the ALJ became the final decision of the Commissioner by operation of law.  See, 42 C.F.R. § 404.981 (2004).  Peltier seeks judicial review upon exhaustion of her administrative remedies under 42 U.S.C. 405(g).  Louise Peltier v. Jo Anne B. Barnhart, Commissioner of Social Security, Clerk's Docket #3, (D.N.D. 2004)(File No. A3-04-082)(January 20, 2006).  Peltier moved for summary judgment on March 31, 2006. Docket # 8.  The Commissioner also moved for summary judgment. Docket # 10.

  The Plaintiff was born on January 6, 1970.  ( Tr.  71).  She suffers from an organic mental disorder and a learning disability. (Tr. 20).  She attended school through grade eight in Dunseith, North Dakota.  (Tr. 89).  She quit school after she started tenth grade. (Tr. 89, 274). She does not have a GED.  (Tr. 274).  She has no past relevant work.  (Tr. 19).

In 1986, at age 16, Plaintiff was assessed by a school psychologist, Dr. Paul Dauphinais, Ph. D. (Tr. 112-119).  The Wechsler Intelligence Scale for Children-Revised (WISC-R) disclosed a verbal IQ of 50, a performance IQ of 88 and a full scale IQ of 68.  (Tr. 112).  Dr. Dauphinais found Peltier's scores were very low in the verbal portion of the test. (Tr. 118).  The subtests included general information, vocabulary, common sense and arithmetic.  Dr. Dauphinais concluded that Plaintiff either had not learned the very basic information or was unable to retrieve it. (Tr. 118).  He noted that Plaintiff had difficulty with language expression and processing.  (Tr. 118).  He recommended special services for Peltier.  (Tr. 119).

At this same time Plaintiff was the subject of a report for her Individual Education Plan. (Tr. 120).  The plan indicates that she should receive one hour per day of special education services and be mainstreamed into regular classrooms for her other classes with modifications for her reading problems.  (Tr. 122).

On February 14, 2000 when Plaintiff was 30 years old, she returned to Dr. Dauphinais for an evaluation to determine eligibility for vocational rehabilitation services. (Tr. 67) .  Although Peltier tested for her GED 5 or 6 times, she was unable to pass the GED test. (Tr. 274).  She was given the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III).  (Tr. 167).  This second test revealed a verbal IQ of 69, a performance IQ of 79 and a full scale IQ of 72 (Tr. 167).  He found the full scale IQ of 72 to be the best indicator of her ability. (Tr. 167).

She was also seen at the Communication Disorder Clinic at Minot State University.  (Tr. 169).  During the testing for an evaluation her auditory acuity was within functional limits but her attention span was reduced. (Tr. 170, 173).  She exhibited dental abnormalities and articulation problems but was intelligible during conversation. (Tr. 173).  She had marked to

significant deficits linguistically. (Tr. 173). The results were consistent with her decreased level of cognitive functioning and reduced educational achievement. (Tr. 173).

Peltier's records were reviewed by Dr. H.D. Hase, state agency psychologist. (Tr. 180-193). He found that Plaintiff had an organic mental disorder encompassing borderline intellectual functioning and a reading disorder. (Tr. 181). He found mild restriction of daily activities of daily living; moderate difficulty in maintaining social functioning; marked difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 190). Dr. Hase concluded that Plaintiff "could be expected to do simple, routine work of [an] unskilled nature". (Tr. 178). This was confirmed by a reviewing medical consultant. (Tr. 194).

On July 31, 2002 Peltier appeared for a psychological evaluation in connection with her application for benefits. (Tr. 196-199). Dr. Volk, a clinical psychologist, noted the 2000 IQ scores indicated "intellectual functioning in the borderline range of ability. (Tr. 197). After further testing Dr. Volk found Plaintiff had diffuse and significant cognitive impairment that was consistent with her diagnosis of Borderline Intellectual Functioning. (Tr. 199).

Dr. Hase reviewed Plaintiff's records again on August 28, 2002. He again concluded that Peltier had an organic mental disorder encompassing borderline intellectual functioning and a learning disorder. (Tr. 216). This produced a moderate restriction of the activities of daily living, difficulty maintaining social functioning, and marked difficulty in maintaining concentration, persistence and pace. (Tr. 225). She had a marked limitation to understand and remember detailed instructions. (Tr. 211-212).

Plaintiff testified at the hearing before the ALJ and reported that she could not work because she had trouble understanding things and was unable to read. (Tr. 279). She also

complained of memory problems which required her to write things down. (Tr. 282). She could read her own writing but indicated others had difficulty reading it. (Tr. 282). She reported depression and trouble sleeping. (Tr. 279). She also had problems with headaches up to three times a day, though they were helped with medication. (Tr. 280-281). She also complained of a buzzing sound in her right ear. (Tr. 283).

Warren Haagenson, a vocational expert testified at the hearing in front of the ALJ and testified that Plaintiff had no past relevant work. The ALJ then asked whether a an individual of Plaintiff's age and educational background, without limitations, without complex tasks as simple, rote, repetitive tasks, learnable with verbal and visual instructions, and no dealing with the public or handling money. (Tr. 286). Mr. Haagenson opined that such an individual could work as a motel cleaner and hand packager with 6,000-8,000 and 40,000 jobs in the region. (Tr. 286-287).

Following the hearing the ALJ found that Plaintiff had "severe" impairments of "organic mental disorder and learning disorder." (Tr. 16). He further found that the impairments did not meet or medically equal any of the impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 17). He determined that Plaintiff has a residual functional capacity that does not have any exertional or physical limitations, but that she is limited to unskilled, simple, repetitive tasks and is unable to perform work involving money or interaction with the public. (Tr. 19). The ALJ relied on the vocational expert's opinion that Plaintiff could work as a motel cleaner or hand packager and was thus not disabled under the Act. (Tr. 20).

## DISCUSSION

The standard of review applied to determinations of the Commissioner is deferential, and

the Commissioner's findings are to be affirmed if supported by substantial evidence in the records as a whole. Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Sultan v. Barnhart, 368 F. 3d 857, 862 (8th Cir. 2004). In order to determine whether evidence is substantial, the court considers "evidence that detracts from the commissioner's decision as well as the evidence that supports it." Id. at 863. The Commissioner's decision is not subject to reversal simply because the reviewing court would have reached a different conclusion or because substantial evidence also exists which would support a contrary outcome. Id. If after review the court is capable of drawing two inconsistent positions and one of those positions represents the Commissioner's findings, the decision must be affirmed. Dixon v. Barnhart, 353 F.3d 6602, 605 (8th Cir. 2003).

An individual claiming disability benefits has the burden of proving her disability by establishing the existence of a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000); 42 U.S.C. § 423(d)(1)(A). If the claimant succeeds, the burden of persuasion shifts to the commissioner to establish that plaintiff can perform some other type of substantial gainful employment in the national economy. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).

The claim is analyzed pursuant to a five-part test: (1) Is the claimant currently engaged in substantial gainful activity? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the impairment meet or equal an impairment listed at 20 C.F.R. pt. 404, Subprt. P, app. 1? (If so, disability is automatic); (4) Does the impairment prevent the claimant from doing past relevant work? And, (5) Does the impairment prevent the claimant from performing any other work that exists in the regional or national economy in significant numbers?

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See, 20 C.F.R. §404.1520 (2002). When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary.  See, Bartlett v. Heckler, 777 F.2d 1318, 1319 (8th Cir. 1985).  At the final stage only is it permitted to consider the claimant's age, education and work experience in light of his or her residual functional capacity.  McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.1520 (2002).

All parties agree with the ALJ's findings that Plaintiff has not engaged in substantial gainful activity and that Plaintiff has severe impairments: namely organic mental disorder and learning disorder.  Thus the question for this court is whether there is substantial evidence to support the ALJ's findings on steps three and five of the five part test (Plaintiff had no past relevant work at step four).  Plaintiff contends that the ALJ failed to address the discrepancy between Ms. Peltier's 1986 IQ test and the test taken in year 2000, that the ALJ failed to apply the correct legal standard for determining whether Ms. Peltier met the listing for mental retardation, that the ALJ's hypothetical did not reflect Plaintiff's impairments and resulting functional limitations, that the vocational expert provided testimony inconsistent with the information in the Dictionary of Occupational Titles, that the ALJ findings relating to Ms. Peltier's mental abilities were absent and the credibility finding was inadequate.  The Commissioner contends the ALJ findings are supported by substantial evidence.

### *IQ Test Discrepancies*

The record contains the results of two IQ tests administered to Plaintiff in 1986 and 2000 by Dr Dauphinais. (Tr. 112-119 and Tr. 167-168).  The Social Security regulations do not specify which of two conflicting scores an ALJ should disregard when there are conflicting scores from two apparently valid IQ tests.  Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001).  One court has

suggested that the regulations require that the Social Security Commissioner prefer the lowest score. Id. Citing Ray v. Chater, 934 F.Supp. 347,350 (N.D. Cal 1996). If the Ray approach was followed Peltier would be disable under 12.05 Mental retardation because she would have a "valid verbal performance or full scale IQ of 59 or less". 20 CFR Ch. III Pt 404, Subpt. P. App.1 12.05 (A). Further the regulations provide that if "a full scale IQ are provided in the Wechsler series we use the lowest of these in conjunction with 12.05." 20 CFR Ch. III Pt.404, Subpt. P. App1 (D)(6) (c). An argument can be made that the lowest score from several valid full IQ tests should be the score used, thus qualifying claimant for benefits. This is because a person's IQ is presumed to remain stable over time. Muncy 247 F.3d at 734. However an ALJ may disregard a claimant's score if the score is inconsistent with the claimant's daily activities and behavior. Muncy, 247 F.3d 733. Here the ALJ found that Peltier did not have additional impairments that imposed a significant limitation on her ability to perform work-related functions. Plaintiff had only moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning and no episodes of decompensation. (Tr. 17) While she has marked difficulties in maintaining concentration, persistence and pace the ALJ found no evidence of an underlying chronic disorder of at least two years duration resulting in decompensation. (Tr. 17). Thus under 12.05(D) the ALJ found that Peltier had one but not two of the requirements under D and thus did not have the required level of severity of mental retardation to qualify for benefits. In this case, like Muncy, the case should be remanded to the Commissioner to explain why the 2000 IQ test was preferred over the 1986 test that would have qualified Peltier for benefits.

*Mental Retardation*

Under the rules mental retardation 'refers to a significantly subaverage general functioning with adaptive functioning initially manifested during the developmental period..." 20 CFR pt. 404,

subpt. P app. 1 Listing 12.05. (2006).  Plaintiff contends that her 1986 score qualifies her under section "B".  Once the ALJ decided that score was not the proper score to use his review is whether Plaintiff qualified under the remaining standards.

Section A indicates that mental capacity may be "evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing or bathing) and inability to follow directions, such that the standardized measures of intellectual functioning is precluded."  The ALJ found no evidence of decompensation, functional limitations, or a highly supported living arrangement.  (Tr. 17).

The required level of severity may also be met if a claimant shows "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation or function;"  (under C).  The ALJ considered claimant's headaches and found they were not severe and imposed no more than minimal limitations on her ability to perform work related activity. (Tr. 16).  The ALJ also considered claimant's symptoms of depression and insomnia. (Tr. 16).  The ALJ found the duration was not sufficient to constitute a severe impairment.  (Tr. 170). Finally claimant reported "buzzing" in her ear two or three times per month for twenty minutes at a time.  (Tr. 17).  The ALJ found the buzzing was not a determinable medical impairment.  (Tr. 17).  Thus the ALJ determined that a finding could not be made on medical considerations alone and that Plaintiff was not fully credible. (Tr. 17).  The ALJ noted that Plaintiff gave inconsistent testimony about her ability to read and write.  (Tr. 18).  The ALJ noted that she testified she could not read and write but relied on her daughter but later stated she wrote down things all the time and could read her own writing when no one else could.  (Tr. 278 and 272).  The ALJ also noted that Plaintiff cared for her five children by herself, cleaned her house, prepared her children's meals.  (Tr. 277, 278, 95-97).  There is

9

substantial evidence in the record to support his conclusions.  If however the ALJ should have used the lowest IQ score Plaintiff's credibility is not relevant and she is entitled to benefits because of the severity of her retardation.

### *Vocational Expert*

Based on the testimony of the vocational expert, the ALJ found that Peltier retained the residual functional capacity to perform unskilled work.  (Tr.19).  The ALJ posed a hypothetical question to the vocational expert assuming Plaintiff's age, education and background and no exertional limitations.  The ALJ then asked whether Plaintiff was capable of "simple, rote, repetitive tasks, learnable with, verbal and visual instructions, no dealing with the general public, no dealing with money."  (Tr. 286).  Testimony from a vocational expert based on a properly phrased hypothetical question constitutes substantial evidence.  Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001).  The vocational expert testified that Plaintiff could perform the work as a motel cleaner and hand packager.  (Tr. 286-287).

A proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant.  Hutton v. Appel, 175 F.3d 651, 656 (8th Cir.1999).  Plaintiff contends that the vocational expert's testimony was in conflict with the Dictionary of Occupational Titles (DOT) which requires that the expert's opinion be disregarded.  When expert testimony conflicts with the DOT, the DOT controls.  Montgomery v. Chater, 69 F.3d 273,276 (8th Cir. 1995).  The DOT classifications may be rebutted with expert testimony that shows that particular jobs are ones claimant can perform.  Id.  The ALJ found that Plaintiff's "limitations preclude complex tasks, dealing with money, or public interactions."  (Tr. 19).  The vocational expert found that the jobs of hand packager and motel cleaner were consistent with the descriptions in the Dictionary of Occupational Titles and were jobs the Plaintiff was capable of doing.  (Tr. 19).   However the DOT

requires a hand packager to have reasoning skills sufficient to carry out detailed but uninvolved written oral instructions and the mathematical skills to perform the four basic arithmetic operations with coins as part of a dollar. DOT 323.687-018.  The testimony shows that Ms. Peltier could add and subtract but not multiply or divide.  (Tr. 275).  Similarly the house cleaner, hotel & restaurant has the same mathematical skills requirement.  Ms. Peltier's marked limitation including her inability to understand and remember detailed instructions and limited ability to attend and concentrate and interact with the public are not addressed by the vocational expert or the ALJ.  Thus the ALJ could not properly conclude that Plaintiff was not disabled because she could perform work existing in the national economy despite her mental impairments.

**IT IS HEREBY ORDERED** that the Plaintiff's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant's motion for summary judgment is **DENIED.**  The matter is hereby **REMANDED** to the Commissioner for further findings consistent with this opinion.

Dated this 20TH day of June, 2007, at Fargo, North Dakota.

*/s/ Ralph R. Erickson*
Ralph R. Erickson
United States District Judge